## TROTTER v. UNION INDEMNITY CO.

Circuit Court of Appeals, Ninth Circuit.
October 14, 1929.

No. 5896.

J. Speed Smith and Henry Elliott, Jr., both of Seattle, Wash., for appellant.

Bausman, Oldham & Eggerman and Edw. L. Rosling, all of Seattle, Wash., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and LOUDERBACK, District Judge.

DIETRICH, Circuit Judge. About 4:30 o'clock in the morning of July 3, 1927, while riding as the guest of one Myron Bullock, in an automobile which the latter was driving, the appellant was injured as the result of a collision due to the negligence of Bullock, who, apparently, was partially intoxicated. The car belonged to W. L. Grill, who, three or four months prior thereto, had turned it over to one Hickey for his use in making sales, upon commission, of town lots belonging to Grill near Seattle. Upon the night referred to, Hickey fell into a conversation with Bullock, in the course of which they discussed the possibility of the employment of the latter to assist in selling the lots, but no agreement was reached. While thus engaged they drank some intoxicating liquor, and when they parted, late at night, Hickey authorized Bullock to take the car from the garage and use it for his pleasure.

Appellant brought suit for damages and recovered a final judgment against both Hickey and Bullock—against Hickey apparently upon the ground that he had delivered the car to Bullock for his use when he knew that he was under the influence of liquor. It is also undisputed that Bullock had no driver's license, and that, under the state statutes, it was unlawful for one to drive a car without such license.

Not being able to satisfy the judgment so obtained, appellant brought this action to recover from appellee under its insurance policy on the car. The policy ran to and expressly insured Grill, the owner of the car, and also contained this clause: "The unqualified word 'Assured,' wherever used in this Policy, shall be construed to include, in addition to the named Assured in this policy, any person or persons while riding or legally operating any automobile insured hereunder and any person, firm or corporation legally responsible for the operation thereof with the permission of the named Assured. * * * "

Upon issue joined the parties stipulated waiver of a jury. At the trial it was recognized by both sides that a controlling question was whether expressly or impliedly Grill had given his consent that the car be used by Bullock, and in the argument here counsel for the appellant conceded that unless in contemplation of law it is to be held that he did so consent, the judgment of dismissal was right. He does not contend that Grill gave permission directly to Bullock or was acquainted with him or had any knowledge that he was to use the car for pleasure or any other purpose. If there was any consent, it must be held to have arisen by implication from the nature and scope of the bailment to Hickey. Under the evidence perhaps it would be possible to find that in delivering the car to Hickey he consented to its use not only by the latter in person but by his assistants and employees in a campaign to sell the lots, and also that Hickey and members of his family might use it incidentally for pleasure. But we think that to go further and hold that he also contemplated or intended or consented that Hickey might loan it to strangers for purposes of pleasure, having no relation to the project of selling the lots, would be doing violence to the evidence. Appellant relies much upon an isolated sentence in a letter written to the appellee after the accident occurred, in which Grill stated, "I let him (Hickey) use the car as he saw fit, and this included letting other persons use the car." It is doubtful whether, when read in the light of the context, this language has the meaning which appellant imputes to it, but clearly the letter, being a statement of a past transaction, is incompetent as to and is in no wise binding upon appellee. And Grill's testimony given at the trial is opposed to appellant's contention.

But it is unnecessary to discuss the evidence further than to show that in the most favorable view to appellant it is conflicting or that it is reasonably susceptible to opposing inferences. That being true, the findings of the trial court are controlling, and the court expressly found that:

"(1) Grill bailed the auto to Hickey for their mutual benefit, expecting the latter's salesmen might occasionally use it, and that Hickey might use it to some extent for pleasure, but not contemplating that Hickey would delegate use of the auto to joy riders.

"(2) Hickey nevertheless, did delegate use of the car to Bullock, a stranger, and not his employee or salesman, who devoted it to joy riding and therein injured plaintiff."

"(4) Bullock's use of the auto was without Grill's knowledge or consent, express or implied. * * * "

If we interpret these findings in the light of the court's memorandum opinion [33 F. (2d) 363] filed at the same time, the most that can be said for appellant is that restrictions upon the use of the car were not expressed by the owner when he gave Hickey possession thereof. But, admittedly, the only object Grill had was to aid Hickey in carrying to success the business enterprise in which they were both interested. Hence a

restriction to that purpose, in the absence of evidence to the contrary, is clearly implied. It might not be unreasonable to say that the owner contemplated that while the enterprise was in progress Hickey and members of his immediate family would now and then use the car for pleasure, but, as suggested by the court below, to hold, in the absence of any affirmative expression of consent, that Grill contemplated or intended that Hickey would permit use by more or less intoxicated joy riders on the streets of Seattle at 4 o'clock in the morning would be against reason. Nor do we share in the view that express "permission" for a given purpose implies permission for all purposes. See Frederiksen v. Employers, etc., Co. (C. C. A.) 26 F.(2d) 76; Denny v. Royal Indemnity Co., 26 Ohio App. 566, 159 N. E. 107; Kazdan v. Stein, 26 Ohio App. 455, 160 N. E. 506; Id., 118 Ohio St. 217, 160 N. E. 704. Dickinson v. Maryland Sea Co., 101 Conn. 369, 125 A. 866, we do not think is necessarily contra, and if Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.(2d) 473, is opposed, we are unable to follow it.

As to appellant's motion for a diminution of the record, it is very doubtful whether properly it could be allowed; but in disposing of the appeal we have assumed the record to be what the motion suggests it should be, and hence its propriety need not be discussed.

Affirmed.