Sherry DEES, Individually and as Next Friend of Her Minor Children, Trisha Doyle, Cheryl Doyle, and Charlotte Dees, Plaintiffs,

v.

Robert Shawn HALLUM, Diane C. Hallum, Grand Rent A Car, Inc., and Becky L. Davis, Defendants.

Civ. A. No. DC 88–43–D–O.

United States District Court,
N.D. Mississippi,
Delta Division.

Aug. 15, 1989.

Mary Lee Walker Brown, Walker, Brown & Brown, Hernando, Miss., for plaintiffs.

Robert A. Biggs, III, Edmonson, Biggs & Jelliffe, Joseph L. McCoy, Senith Tipton, McCoy, Wilkins, Noblin & Stephens, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

### Introduction

The motion of Grand Rent a Car, Inc. (Grand) for partial summary judgment on its counter and cross-claims for declaratory judgment brings this matter to the court's attention. Grand seeks a declaration that it owes no insurance coverage to its co-defendants, Robert Shawn Hallum and Diane C. Hallum, for any liability to the plaintiffs herein arising out of the automobile accident which gives rise to the instant action. Plaintiffs, in response, raise the applicability of California law to the construction of the rental contract entered into between Mrs. Hallum and Grand, and of the insurance provided for therein. Grand does not address this issue, but rather, in rebuttal, argues from both Mississippi and California law simultaneously. As the choice of law determines even the issues to be addressed, the court shall first address the applicable law.

### Choice of Law

■ Mississippi[1] has adopted the "center of gravity" test of the Restatement (Second) of Conflicts of Laws, § 6. *Mitchell v. Craft*, 211 So.2d 509 (Miss.1968); *Boardman v. United Services Automobile Assoc.*, 470 So.2d 1024 (Miss.1985). *Mitchell* prescribes a presumption that Mississippi law will apply unless "non-forum contacts are of greater significance." *Mitchell*, at 512. It does not appear that this presumption has been carried forward, *see Boardman, supra*, though its application does not affect the outcome in the instant case. Section 193 of the Restatement (Second) lists the factors typically applicable in an action arising from a policy of fire, surety, or casualty insurance. These factors have been approved by the Mississippi Supreme Court. *Boardman*, at 1033[2].

Section 193 provides:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk under the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principal stated in Section 6 to the transaction than that of the parties, in which event the local law of the other state will be applied.

Under the facts of the instant action, it is clear that, at the time the rental contract was entered, Mrs. Hallum, at least, expected that the car was going to be driven only locally; Mrs. Hallum states that she did not, at that time, intend to drive out of the state. No other state was specifically contemplated by the parties. While the rented car was actually out of the state for more time than it was in California, "the parties understood [California] was to be the principal location" of the vehicle. Comment D to Section 193 provides:

There may also be occasions when following the issuance of the policy the principal location of the risk is shifted to some other state. In such situation, this other state will have a natural interest in the insurance of the risk, and it may be that its local law should be applied to determine at least some issues arising under the policy. In any event, application of the local law of the other state would hardly be unfair to the insurance company, at least with respect to some issues, if the company had reason to foresee when it issued the policy that

---

1. *See Klaxon Co. v. Stentor Elec. Manuf. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

2. It should be noted that the court's determination of choice of law applicable to the issues herein presented should in no way be regarded as determinative of the other issues or claims present in the case at bar. *See Boardman* at 1031.

there might be a shift to another state of the principal location of the risk. *Compare Clay v. Sun Insurance Office, Ltd.,* 363 U.S. 207, [80 S.Ct. 1222, 4 L.Ed.2d 1170] (1960), 377 U.S. 179, [84 S.Ct. 1197, 12 L.Ed.2d 229] (1964).

While the rented automobile did shift its location, it did not shift its principal location during that time period. This provision is therefore inapplicable to the instant case. *Compare Boardman* at 1033. Further, the issue of coverage present in the instant case has "little to do with the location of the risk." *Id.* at 1033–34.

Under Section 193, California law should apply to the contract issue, unless another state has a more significant relationship to the transaction and the parties with respect to the particular issue before the court. Section 188(2) [3] provides in pertinent part:

(2) ... the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to the relative importance with respect to the particular issue.

As these factors apply to the instant action: (a) the place of contracting was in California, (b) little negotiation occurred, but what there was took place in California, (c) Mrs. Hallum expected all performance to occur in California.[4] As it happened, the greatest part of the performance did occur in California, (d) Mrs. Hallum expected the subject matter of the contract to remain in California during her possession thereof; in fact, the car passed through several states during the term of the contract, resting in none for long, (e) the plaintiffs are Mississippi residents; all defendants, including all parties to the contract, are residents of California.

■ It appears clear from a consideration of these criteria that Mississippi does not have a more significant relationship to the transaction or the parties than does California.

■ Finally, where application of the center of gravity test would provide for the applicability of the law of another state, the court may refuse to apply that law if to do so would be "contrary to the deeply ingrained and strongly felt public policy of the state." *Boardman,* at 1031; *McNeal v. Administrator of Estate of McNeal,* 254 So.2d 521, 524 (Miss.1971). No party has raised the existence of any policy of the State of Mississippi to which application of the provisions of the California law to the contract and policy involved in the instant action would be repugnant; nor has the court's own research discovered any such policy. *Accord Moore, supra,* at 1151

**3.** Under a straight Restatement approach, the court would consider the "relationship under the principal stated in Section 6 to the transaction and the parties". Restatement (Second) § 193. The Mississippi Supreme Court, however, has held that recourse should rather be had to the principles applicable to contracts in general under the criteria of Section 188(2). *Boardman,* at 1032–34; *see Moore v. United Services Auto Association,* 808 F.2d 1147, 1151 (5th Cir.1987); *Nichols v. Anderson,* 788 F.2d 1140, 1142 (5th Cir.1986); *Perry v. State Farm Mutual Auto Insurance Co.,* 606 F.Supp. 270 (S.D.Miss. 1985). Section 6 provides, in pertinent part:
(2) ... the factors relevant to ·the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability, and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Application of Section 6, rather than Section 188(2), would not affect the court's determination in the instant action.

**4.** It does not appear that Grand had any expectation in this regard.

(stacking of uninsured motorist coverage); *Perry, supra,* at 274 (same); *Boardman, supra,* at 1037–39 (validity of uninsured motorist exclusion); *see also Nichols, supra* (validity of radius-exclusion clause). Accordingly, it is the holding of this court that the substantive law of California should apply to the questions of contract construction in the case at hand.

### Facts

On August 15, 1985, Diane Hallum entered into a rental agreement with Grand Rent A Car for the use of a new Chevrolet Camaro. The contract was entered into in Victorville, California, and at the time, there was no indication that the vehicle would be used outside the state. After renting the car, Mrs. Hallum learned that her father-in-law was near death, and so she and her two sons—Robert Shawn and Daniel—went by car to Oklahoma. From Oklahoma they traveled to Hernando, Mississippi, where they visited Mrs. Hallum's ex-husband. Mrs. Hallum drove the rental car throughout the trip; she realized that, under the terms of the rental agreement, her sons were not allowed to drive the car by reason of age. However, once in Hernando, she allowed her oldest son, Robert Shawn, then 20 years of age, to use the car for a short trip. He was involved in a collision with a car carrying the plaintiffs. Plaintiffs have filed suit against the driver of the car in which they were passengers,[5] against Robert Shawn Hallum for negligence, against Diane C. Hallum for negligent entrustment of a motor vehicle, and against Grand for negligent entrustment.[6] Further, defendant Grand has filed the instant counter- and cross-claims.

The rental agreement contained the following material provisions:

WHO ELSE MAY DRIVE THE CAR. Only someone in my immediate family who permanently lives with me, my employer, a regular fellow employee incidental to business duties, or someone who appears at the time of the rental and signs an additional driver form, may drive the car but only with my prior permission. In any case, the other driver must be at least 25 years old and must be a capable and licensed driver.

. . . . .

LIABILITY INSURANCE. Anyone permitted by this agreement to drive the car will be protected against liability for causing bodily injury, death or property damage up to limits of coverage of $100,000 for each person, but not more than $300,000 for each accident. The driver will also be protected against liability for damaging the property of someone other than the driver and/or renter, up to $25,000. Such coverage will be provided by you [Avis] [7] according to the terms of a standard automobile liability insurance policy. If permitted by law, you can provide coverage under a certificate of self-insurance together with or instead of a policy from an insurance company. In any case, a copy of the policy and/or certificate will be available for my inspection at your main office. Basic no fault insurance coverage is provided where and to the extent the law requires, but I understand that you will not provide supplementary, optional, or uninsured motorist coverages and you and I reject such other coverages to the extent permitted by law. There's no coverage in Mexico and I promise not to take the car into Mexico. In the event that this coverage is extended by operation of law to anyone not permitted by this agreement to drive the car the limits of such coverage shall be the minimum required by the financial responsibility or other applicable law of the state or place in which the accident occurred. I also agree to indemnify you for any loss, lia-

---

5. Since dismissed as a party.

6. Since dismissed. See court's order of February 17, 1989.

7. The contract between Mrs. Hallum and Grand Rent a Car was reduced to writing on an Avis Rent-a-Car form. The connection between Grand and Avis is not yet clear, nor is the effect of this confusing reference to Avis as the provider of insurance or the certificate of self-insurance.

bility or expense arising out of the use of the car that you may have which exceeds the limits of liability insurance stated above.

Defendant Grand has included a copy of a certificate of self-insurance from the California Department of Motor Vehicles, dated April 25, 1985. The certificate was issued in the name of the First Grayline Corporation, Grand Rent A Car Corporation.

### Does Grand Owe Coverage to Robert Shawn Hallum?

■ The contract between Grand and Diane Hallum expressly stated that Mrs. Hallum was not to permit those under 25 years of age to drive the rented car. Further, by its terms, the rental agreement extends liability coverage only to those "permitted by this agreement to drive the car...." As discussed above, California law applies to the construction of the contract. Grand argues that California law does not mandate coverage of a second permitee who drives with permission of the first permittee, but without the permission of the owner. Further, Grand claims, even if coverage were mandated, such a mandate would be inapplicable under California law because Grand is a self-insurer. A review of the law of California demonstrates the fallacy of Grand's assertions.

Grand erroneously states, in its rebuttal memorandum, that "no decision cited in plaintiffs' brief regarding permissive coverage can be applied to the issues herein.... [N]one involve use by a permittee forbidden by the owner to drive the car." Grand has apparently overlooked *Financial Indemnity Company v. Hertz Corp.*, 226 Cal.App.2d 689, 38 Cal.Rptr. 249 (1964). In *Financial Indemnity*, the Court of Appeals for the Second Circuit of California found for coverage under a policy of insurance issued to the Hertz Corporation for a second permittee driver who was allowed to use the rented car by the permittee, despite being excluded as a driver by the rental agreement. While the court noted that neither the permittee nor the sub-permittee had actual knowledge that the use

was forbidden, it does not appear that the court relied on that fact in reaching its decision. *Id.*, 226 Cal.App.2d at 695–96, 38 Cal.Rptr. 249. The court stated that:

Even if the rental contract of Hertz, and the conduct of its employees in relation thereto, had been sufficient to justify their reliance upon the supposition that restrictions therein regarding use of the car by others would be complied with, the law is clear that such restrictions would not serve to relieve it of liability under California's owner's liability law.

*Id.*, citing *Peterson v. Grieger, Inc.*, 57 Cal.2d 43, 55 nn. 3 & 4, 17 Cal.Rptr. 828, 835, 367 P.2d 420, 427 (1961). In *Peterson*, the Supreme Court stated that: "The owner of a vehicle has been held liable under former Section 402 even though a sub-permittee was operating the automobile when the accident occurred contrary to the owner's express instruction to the permittee that no person other than the permittee operates the automobile." (citations omitted).

Grand relies on the case of *Norris v. Pacific Indemnity Company*, 39 Cal.2d 420, 247 P.2d 1 (1952) (en banc). *Financial Indemnity* discussed Norris' applicability.

While this decision [Norris] has not been expressly overruled by our Supreme Court, the extent of its application has been substantially limited by the law declared in the *Wildman* [*v. Government Employees Insurance Company*], 48 Cal.2d 31, 39, 307 P.2d 359 (1957) ] case to the effect that the provisions of former Section 415 of the Vehicle Code were an expression of the public policy of the state, and as such, must be read into every contract of insurance issued herein. Justice Carter, who had dissented in the *Norris* case, authored the opinion of the court in *Wildman*. This later decision was at pains to note that (p. 38) "no case construing Section 415 of the Vehicle Code as it relates to the circumstances here present has been cited to us, nor has independent research revealed one." A footnote to this sentence expressly stated: "The question here presented was not determined by this court in *Norris* [*supra*]; *Souza v. Corti*,

22 Cal.2d 454 (139 P.2d 645, 147 A.L.R. 861) [1943]."

*Financial Indemnity,* 226 Cal.App.2d at 697–98, 38 Cal.Rptr. 249.

The court's own research has discovered several other cases applicable to this issue. The California Supreme Court, in *Metz v. Universal Underwriter's Insurance Co.,* 10 Cal.3d 45, 109 Cal.Rptr. 698, 513 P.2d 922 (1973) (en banc) held that an insurance provision expressly excluding cars rented by the insured to third persons from coverage was void as contrary to Insurance Code Section 11580.1 *citing Financial Indemnity* with approval. The court discussed the legislation underlying that section and stated:

> The net result of those enactments is that Vehicle Code § 16451 no longer mandates coverage of permissive users in ordinary automobile insurance policies, but only in certified policies (see *State Farm Mut. Auto Ins. Co. v. Allstate Ins. Co.,* (1970), 9 Cal.App.3d 508, 525, 88 Cal.Rptr. 246); Insurance Code § 11580.1, however, applied to non-certified policies *the same duty* of mandatory coverage of permissive users as previously embodied in Vehicle Code § 16451. The 1963 legislation thus carried on the legislative policy of protecting those persons injured by the negligence of permissive users by requiring that all policies, certified or non-certified include permissive user coverage. (See *Great American Ins. Co. v. Globe Indem. Co.* (1970), 8 Cal.App.3d 938, 944–945, 87 Cal.Rptr. 653.)

*Id.,* 10 Cal.3d at 51, 109 Cal.Rptr. 698, 513 P.2d 922 (emphasis added); *see also Id.* at n. 5.

And in *Atlantic National Insurance Company v. Armstrong,* 65 Cal.2d 100, 52 Cal.Rptr. 569, 416 P.2d 801 (1966) (en banc) (reversing Court of Appeals for the Second Circuit, 49 Cal.Rptr. 439 (1966)), the Supreme Court held that a provision excluding certain second permittees from the owner's coverage violated Vehicle Code § 415[8] and were thus void. McKeown rented an automobile from the Hertz Corporation; the rental agreement limited the users of the vehicle to the renter, his family, or an employer or employee of the renter. Coverage was to be limited by the terms of the agreement. When a second permittee, outside the class of persons allowed by the agreement to drive the car, was involved in an accident, the court held that he was covered, and that provisions in the policy to the contrary were void. In so holding, the court cited with approval *Financial Indemnity,* a case decided under Insurance Code § 11580.1, for the fundamental proposition that restrictions of coverage to certain classes of permissive users were invalid. The court also adopted the Court of Appeals reasoning that "the public policy considerations set forth in these cases are particularly persuasive as applied to companies 'engaged in the business of placing * * * cars in the hands of others for a profit determined solely by the number of miles driven, without regard to the identity of the actual operations * * *.'" *Id. citing Financial Indemnity,* 226 Cal. App.2d at 699, 38 Cal.Rptr. at 254. The public policy behind old Vehicle Code § 415, and now present in Vehicle Code 16451 and Insurance Code 11580.1, is that of "providing compensation for persons who are injured on the highways through no fault of their own." *Armstrong, supra; Wildman, supra; Continental Casualty Co. v. Phoenix Construction Co.,* 46 Cal.2d 423, 434, 296 P.2d 801, 57 A.L.R.2d 914 (1956).

It is the opinion of this *Erie*-bound court that, under California law, Grand's insur-

---

**8.** The pertinent provisions of Vehicle Code § 415 were recodified in 1959 in Vehicle Code §§ 16450 and 16451. *Armstrong, supra.* Section 16450 provides that Section 16451 applies only to policies which are certified as proof of financial responsibility. Section 16451 provides, in pertinent part:

> An owner's policy of motor vehicle liability insurance shall insure the named insured and any other person using any motor vehicle registered to the named insured *with the express or implied permission of the named insured,* against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of the motor vehicle within the continental limits of the United States. . . .

(emphasis added). This language is substantially identical to that found in Insurance Code § 11580.1.

ance coverage would provide coverage for Robert Shawn Hallum, despite the terms of the rental agreement between Diane Hallum and Grand.

### Does the General Rule Apply to Grand as a Self–Insurer

■ Grand relies on *Glens Falls Insurance Company v. Consolidated Freightways*, 242 Cal.App.2d 774, 51 Cal.Rptr. 789, 797 (1966), for the proposition that "a certificate of self-insurance is not a motor vehicle liability policy of insurance." Grand also relies on the case of *Western Pioneer Insurance Company v. Estate of Taira*, 136 Cal.App.3d 174, 185 Cal.Rptr. 887 (1982) for its position that, as a self-insurer, it is not covered by Insurance Code § 11580.1(b), and thus does not have a duty to indemnify a permissive user to the same extent as if it were an insurer. In *Western Pioneer*, by strictly construing Section 11580.9(g),[9] the California Court of Appeals for the Fifth District held precisely as Grand would have this court hold.

Grand does not, however, cite this court to the current version of Section 11580.9(g), or to the cases of *Interinsurance Exchange of the Automobile Club of Southern California v. Spectrum Investment Corporation*, 209 Cal.App.3d 1243, 258 Cal. Rptr. 43 (1989), and *Interinsurance Exchange of the Automobile Club of Southern California v. Garcia*, 160 Cal.App.3d 419, 206 Cal.Rptr. 621 (1984). In *Garcia*, the California Court of Appeals for the Second District followed *Western Pioneer*, but stated:

> We note, however, that the Legislature accepted the Western Pioneer Court's invitation to extend the effect of Section 11580.9, subdivision (g) by amending the statute in 1983 to read "[f]or purposes of this article ..." instead of "purposes of this section" ... thus, our holding in this case is limited to pre–1984 situations. Now, in 1984, a certificate of self-insurance must be considered as a policy of

automobile liability insurance, and the victim of an insolvent self-insured would fall under the provisions of "insurer's solvency protection" of Section 11580[.1], sub-division (b)(2).

*Garcia*, at 425 n. 5, 206 Cal.Rptr. 621.

In *Spectrum Investment*, the Court of Appeals for the Second District held that amended sub-section (g) applied to all of Article 2, including the provisions at issue herein. The court went on to discuss further amendments made to sub-section (g) in 1984, including in the definition of "policy of insurance" under Article 2 of the Insurance Code to include "a deposit of cash made pursuant to Section 16054.2 of the Vehicle Code or a bond in effect pursuant to Section 16054 of the Vehicle Code." The legislative history refers to the legislature's concern with the closing of loopholes used primarily by rental car agencies.

As the contract between Diane Hallum and Grand Rent a Car was entered into on August 15, 1985, it is clear that the 1983 amendment to California Insurance Code § 11580.9(g) applies in the case at bar. Grand's contentions to the contrary are without merit. The court therefore holds that defendant Grand Rent a Car, Inc.'s motion for partial summary judgment on its counter and crossclaims regarding coverage due Robert Shawn Hallum should be denied.

### Does Grand Owe Coverage to Diane C. Hallum?

■ Diane Hallum has been sued for negligent entrustment of a motor vehicle. Insurance Code § 11580.1(d) allows for specific limitations in required coverage. Subsection (d)(1) specifically refers to required coverage for negligent or alleged negligent entrustment; this section provides for optional agreed limitations for persons specifically designated by name in the policy. This provision implies that coverage for negligent entrustment must generally be

---

9. "For purposes of *this section*, a certificate of self-insurance issued pursuant to Section 16053 of the Vehicle Code or a report filed pursuant to Section 16051 of the Vehicle Code shall be considered a policy of automobile liability insurance." California Insurance Code § 11580.9(g) (as cited in *Western Pioneer*, Sept. 29, 1982) (emphasis added). The court construed "this section" to limit the operation of sub-section (g) to Section 11580.9 only.

provided under Insurance Code § 11580.1. *See Allstate Insurance Company v. Superior Court of San Bernardino,* 190 Cal. App.3d 242, 235 Cal.Rptr. 353 (1987). This court thus need not consider whether, under the express terms of the rental agreement, defendant Diane Hallum was insured against negligent entrustment, or whether the terms of the "standard form policy" or the rental agreement constitutes the contract of insurance applicable to Mrs. Hallum, or whether the provisions of both, taken together, are ambiguous and must thus be construed most strongly against the insurer under California law. It is the opinion of the court that Grand's motion for summary judgment as to its counter- and cross-claims regarding the insurance coverage of Diane Hallum, as well as its claims regarding Robert Shawn Hallum, should be denied.

An order in accordance herewith shall issue.